## In re WONG TOY.

## Ex parte SULLIVAN.

(District Court, D. Massachusetts. February 20, 1922.)

No. 2041.

Aliens ⊜⊸32 (8)—Status established by fair preponderance of evidence.

On an issue as to the United States citizenship of a person of the Chinese race, he is not required to establish his citizenship beyond a "substantial doubt," but only by a fair preponderance of the evidence.

Habeas Corpus. On petition of John G. Sullivan, on behalf of Wong Toy, against Irving F. Wixon, for writ of habeas corpus. Writ granted.

John G. Sullivan, of Medford, Mass., for petitioner.
The United States Attorney, opposed.

MORTON, District Judge. Habeas corpus to the Commissioner of Immigration. The petitioner is a Chinese, who has been excluded and is held for deportation. He claimed admission as the son of Wong Ah Jum, an American citizen. The immigration officials decided that the relationship was established, but that Wong Ah Jum's citizenship was not. The questions are whether the evidence on this point was so clear and convincing that the immigration tribunals acted unreasonably and arbitrarily in rejecting it, and whether they acted under fundamentally incorrect assumptions of law. The facts are as follows:

In 1891 a Chinese boy, giving the name of Wong Ah Jum, was discharged on habeas corpus proceedings in the United States District Court at San Francisco on the ground that he was a native-born American citizen. His tintype, taken at the age of 13, forms part of the record in that case. This adjudication established the status of the person affected by it. The father of the petitioner claims—and testifies —that he was the boy so discharged. He describes in detail—and, so far as shown, correctly—the events connected with the hearing and discharge. The only discrepancy is that he says his photo was on soft paper; whereas the record shows, as before stated, that it was a tintype.

In 1907 a person claiming to be the Wong Ah Jum of the habeas corpus proceeding applied in San Francisco for a certificate establishing his status, so that he might return to this country after making a visit to China. The certificate was issued. The certified copy of the habeas corpus record presented at that time to the immigration officials and retained by them during the owner's absence, and returned by them to the owner when he entered this country, is produced by the father. It bears an admittedly genuine indorsement across the face, showing departure from San Francisco October 23, 1907. In 1909 a person coming from China presented the travel certificate at San Francisco, and was admitted as being the person to whom it had been issued two years before, and there is a notation on the record that the habeas corpus

⊜⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

certificate was returned to him at that time. The father of the petitioner testifies that he is the man who made the trip to China, and there is nothing in his testimony which casts doubt on this statement.

So far the case would seem clear. But in 1910 a Chinaman, not the present father, sought admission at Boston, claiming to be the person who had been discharged in the habeas corpus proceeding 21 years before. Three San Francisco inspectors in the Immigration Service gave it as their opinion that he was not the same person. There was' evidence to the contrary, based largely on a comparison of the applicant with the photographic copies of the tintype on the habeas corpus. The upshot was that the man was admitted as being the person who had been discharged in 1891. This person now lives in Buffalo, and in these proceedings has been referred to as the Buffalo claimant.

Obviously the record in the habeas corpus case is being fraudulently used, either by the Buffalo claimant or by the petitioner's father. The immigration inspectors at San Francisco are strongly of the opinion that the present claimant is the true one, and an inspector in the New York office of the department is "unquestionably" of the same opinion. The testimony of the father in these proceedings is straightforward and consistent to the same effect, except for the mistake about the tintype, which, considering that 30 years have intervened since it was taken, seems not a very weighty matter. He was accepted as the man discharged by the inspectors at San Francisco on a personal inspection in 1906 or 1907 and 1909. Commissioner Billings, who admitted the Buffalo claimant at Boston in 1910, against the opinion of the San Francisco official, said in his memorandum:

"I am inclined to believe, as are also Dr. M. V. Safford and the Chinese inspectors, that the applicant does bear a resemblance to the photo attached to the court record, and therefore instructions have this day been issued to admit him"

—not a very strong finding.

It seems clear that the weight of the evidence on the question of the father's citizenship is in his favor. This was sufficient to entitle the petitioner to a finding in his favor on the point. But the immigration tribunals apparently exacted a higher degree of proof, unwarranted in law, and on that account refused admission. The memorandum of the Assistant Commissioner General says:

"The very fact that experienced officers have reached different conclusions on the point at issue in the case, and that another party has already been admitted to the United States as being identical with the person represented by the photo on court record No. 9527 (the habeas corpus case), is evidence that there is substantial doubt as to the correctness of the claims now advanced by the present claimant. The burden of proof is by law placed upon the applicant, and it is manifest that it has not been sustained."

In other words, the petitioner has been held to establish beyond "substantial doubt" that his father is a citizen. This was plain and fundamental error in law. It was sufficient if the necessary facts were established by a fair preponderance of the evidence.

Referring to a similar situation, the Supreme Court recently said:

"It is better that many Chinese immigrants should be improperly admitted than that one naturalized citizen of the United States should be permanently

excluded from this country." Kwock Jan Fat v. White, 253 U. S. 454, 40 Sup. Ct. 566, 64 L. Ed. 1010.

On the evidence before the immigration tribunals the right of the applicant to admission was established. An order will be entered that the writ issue, and upon the return of it, unless the respondent desires to present further evidence, an order will be entered that the petitioner be discharged.